**FILED**
August 24, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

No. 1:26-cv-01711

**Jaramillo-Arellano,**
*Petitioner,*

v.

**Blanche, et al.,**
*Respondents.*

## MEMORANDUM OPINION AND ORDER

Jose Luis Jaramillo-Arellano is a native and citizen of Mexico currently being detained by Respondents pending removal proceedings pursuant to 8 U.S.C. § 1225(b)(2)(A). He filed a petition for writ of habeas corpus demanding immediate release and requesting an injunction against removing him from the United States or transferring him outside the Western District of Texas while his petition is pending. In the alternative, Petitioner requests the Court order Respondents to render a decision on Petitioner's pending request for prosecutorial discretion, termination, or administrative closure within a fixed and enforceable deadline. The petition, request for an injunction, and request for an order directing Respondents to render a decision are all denied.

## BACKGROUND

Petitioner first entered the United States without inspection in 1998 and lived in the United States until 2003 when he was encountered by immigration officials and returned to Mexico. A few days later, Petitioner re-entered the United States without inspection and has remained since. On August 3, 2013, Petitioner was arrested for driving under the

influence. The case was dismissed and refiled as an obstruction of highway. On October 9, 2014, Petitioner was sentenced to 18 months of probation. Petitioner completed his probation on April 13, 2016. Tragically, Petitioner's minor son was the victim of felony abuse committed by an adult family acquaintance between February 2020 and September 2021. Petitioner cooperated with the Travis County Sheriff's Office and District Attorney's Office in investigating this crime.

On or about June 23, 2026, Petitioner was taken into federal immigration custody following a traffic stop. Petitioner is currently detained in the T. Don Hutto Detention Center in Taylor, Texas.

On June 25, 2026, Petitioner filed a petition for writ of habeas corpus. In early July 2026, Petitioner filed a complete and certified Form I-918 petition for U Nonimmigrant Status (a U visa). U Nonimmigrant status is available to victims of qualifying criminal activity (including certain family members who stand in for a victim who is a minor, incapacitated, or deceased) who have been helpful to law enforcement, and allows recipients to remain and work lawfully in the United States temporarily.[1] Petitioner also submitted a Form I-192 application for waiver of grounds of inadmissibility with USCIS. Both the U Nonimmigrant petition and the application for waiver remain pending.

On July 15, 2026, Petitioner filed a first amended petition for writ of habeas corpus demanding immediate release and requesting an injunction against removing him from the United States or transferring him outside the Western District

---

[1] The Travis County District Attorney's Office certified Supplement B to the Form I-918 petition, attesting to the crime and Petitioner's helpfulness, as required by law. *See* 8 U.S.C. § 1184(p)(1); 8 C.F.R. § 214.14(c)(2)(i) (2026).

of Texas while his petition is pending. In the alternative, Petitioner requests the Court order Respondents to render a decision on Petitioner's pending request for prosecutorial discretion, termination, or administrative closure within a fixed and enforceable deadline. The Court ordered Respondents to show cause why the writ should not be granted. Respondents answered, Petitioner replied, and the Court now addresses the petition.

## LEGAL STANDARD

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2). Through 28 U.S.C. § 2241, Congress authorized federal district courts to entertain habeas corpus petitions, including petitions brought by noncitizens such as Petitioner, challenging the lawfulness of their immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (confirming section 2241 jurisdiction over a constitutional challenge to immigration detention); *see also Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). The writ exists to "grant relief from unlawful imprisonment or custody," *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976), and does not reach a challenge to a final order of removal, which Congress has channeled exclusively to the courts of appeals, *see* 8 U.S.C. § 1252(a)(5).

To obtain the writ, a petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam). The petitioner bears the burden of demonstrating that the challenged custody is unlawful, and the Court must "summarily hear and determine the

facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## ANALYSIS

Petitioner asserts that his pre-removal detention is unlawful because it violates due process, administrative regulations, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), his rights as a member of the *ICWC v. Noem* class, and the *Accardi* doctrine requiring agencies to follow their own rules and procedures. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). His arguments do not require the relief he seeks.

### I. Neither due process nor the statutory text requires granting the petition.

Petitioner argues that the Court should grant his petition because detention is not authorized by the INA or internal Immigration and Customs Enforcement ("ICE") civil custody procedures and, even if it were, his detention violates the Due Process Clause of the Fifth Amendment.

With respect to the statutory argument, the Fifth Circuit recently held that Congress expressly authorized detention of an alien during removal proceedings without an individualized bond hearing. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 494–508 (5th Cir. 2026); 8 U.S.C. § 1225(b)(2). Petitioner's detention is thus consistent with the INA. And because his detention is mandated by the INA, Petitioner's argument that agency regulations entitle him to a hearing are dead on arrival because they contradict the statutory text. *See Tapia v. Mullin*, No. 1:26-cv-01321, 2026 WL 1657240, at *6 (W.D. Tex. June 8, 2026) ("If agency regulations contradict the plain text of the governing statute, the law enacted by Congress controls."

(citing *Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022))).

As for his due process argument, it is well-established that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. The "right for an alien to be released into the interior of the United States during his immigration proceedings—is not one of those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Tapia*, 2026 WL 1657240, at *4 (quoting *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024)) (internal quotation marks omitted).[2] Without a fundamental right, Congress's decision to require the detention of individuals pending removal proceedings is viewed under rational basis, and is plainly rational. *Id.* at *5.

## II. ICE's 2011 Policy and 2021 Policy do not require granting the petition.

Petitioner separately contends that the APA and the *Accardi* doctrine require his release because ICE is failing to follow its 2011 Policy Statement and its 2021 Policy Directive instructing ICE not to take civil enforcement actions against individuals who have petitioned for a U visa absent

---

[2] The Fifth Circuit's panel decision in *Rodriguez v. Ortega*, 180 F.4th 702 (5th Cir.), *vacated on reh'g en banc*, 181 F.4th 608 (5th Cir. 2026), was vacated and rehearing en banc was granted on July 10, 2026, *see Rodriguez v. Ortega*, 181 F.4th 608, 609 (5th Cir. 2026) (en banc) (per curiam). "[T]hus the opinion is not binding precedent[,]" *Munn v. City of Ocean Springs*,763 F.3d 437, 441 n.2 (5th Cir. 2014), and the Court is not persuaded by its reasoning. For the reasons set forth in *Esquivel v. Mullin*, No. 1:26-cv-02000, 2026 WL 2322821 (W.D. Tex. Aug. 10, 2026), the subsequent stay, *Rodriguez v. Ortega*, 183 F.4th 387, 388 (5th Cir. July 21, 2026) (en banc) (per curiam), does not preclude this Court from adjudicating or entering final judgment in this case.

extraordinary circumstances. But neither directive prohibited ICE from instituting removal proceedings against Petitioner because he did not submit his petition for a U visa until *after* he was placed in removal proceedings. And neither policy requires releasing him now that he is in removal proceedings.

Over the years, ICE has issued multiple policy statements addressing enforcement actions against aliens who have applied for or been granted victim-based immigration benefits. In 2011, ICE issued a policy statement regarding "the exercise of prosecutorial discretion in removal cases involving the victims and witnesses of crime." JOHN MORTON, U.S. IMMIGR. & CUSTOMS ENF'T, Pol'y No. 10076.1, PROSECUTORIAL DISCRETION: CERTAIN VICTIMS, WITNESSES, AND PLAINTIFFS, at p. 1 (Jun. 17, 2011) [hereinafter "2011 Policy"], https://www.ice.gov/doclib/foia/prosecutorial-discretion/certain-victims-witnesses-plaintiffs.pdf [https://perma.cc/84FS-CCS5]. Later, in 2021, ICE issued a policy directive setting forth its "policy regarding civil immigration enforcement actions involving noncitizen crime victims, including applicants for and beneficiaries of victim-based immigration benefits." U.S. IMMIGR. & CUSTOMS ENF'T, Directive 11005.3, USING A VICTIM-CENTERED APPROACH WITH NONCITIZEN CRIME VICTIMS, at p. 1 (Dec. 2, 2021) [hereinafter "2021 Policy"] (footnotes omitted), https://www.ice.gov/doclib/foia/policy/11005.3_UsingVictimCenteredApproachNoncitizenVictims.pdf [https://perma.cc/F34W-KZCW]. Generally speaking, these policies limited ICE's discretion to take civil enforcement action against individuals who it knew were crime victims or had petitioned for a U visa.

In 2025, ICE repealed both the 2011 Policy and the 2021 Policy, substituting in their place a new policy governing immigration enforcement actions against "aliens who are known beneficiaries of victim-based immigration benefits or

are known to have pending applications or petitions for such benefits." CALEB VITELLO, U.S. IMMIGR. & CUSTOMS ENF'T, Pol'y No. 11005.4, INTERIM GUIDANCE ON CIV. IMMIGR. ENF'T ACTIONS INVOLVING CURRENT OR POTENTIAL BENEFICIARIES OF VICTIM-BASED IMMIGR. BENEFITS, at p. 1 (Jan. 30, 2025) [hereinafter "2025 Guidance"], https://www.ice.gov/doclib/foia/policy/11005.4.pdf [https://perma.cc/C69S-RULF].

The policy survived only a matter of months before a district judge for the U.S. District Court of the Central District of California stayed the 2025 Guidance, "including its rescission of prior policies," as to "the members of all three Classes" that the Court preliminarily certified. *Immigr. Ctr. for Women & Child. v. Noem*, No. 2:25-cv-09848-AB-AS, 2026 WL 1455004, at *47 (C.D. Cal. May 20, 2026) [hereinafter "*ICWC*"]. And now Petitioner relies on that order in *ICWC* to argue that he must be released. According to him, *ICWC* requires his release based on the following logical chain: (a) he is a class member; (b) as a class member, the 2025 Guidance is stayed as to him; (c) with the 2025 Guidance stayed, ICE was required to follow the 2011 Policy and 2021 Policy; (d) those policies prohibit placing him in removal proceedings; (e) his removal proceedings must therefore be dropped; and (f) he must be released because his section 1225 detention is premised on his being in removal proceedings.

As an initial matter, it is worth noting that the merits of the *ICWC* order are highly questionable. So too is whether that court had jurisdiction to enter an order plainly designed to have a nationwide effect on habeas petitions within the exclusive jurisdiction of other judicial districts. *See Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) (explaining that the "traditional rule" is that habeas relief "is issuable only in the district of confinement"); *see also Lee v. Wetzel*, 244 F.3d 370, 373 (5th Cir. 2001). The first concern, standing alone, does not alter this

Court's analysis. This Court is "bound by the proper orders of another federal court," *In re DaimlerChrysler Corp.*, 294 F.3d 697, 700 (5th Cir. 2002) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995)), and mere disagreement with an order's merits does not make it improper. The second concern is different, because lack of jurisdiction does make an order improper. *See Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78 (1939) (citing *Old Wayne Mut. Life Ass'n v. McDonough*, 204 U.S. 8, 15 (1907)); *Thompson v. Whitman*, 85 U.S. 457, 467–68 (1873); *Adam v. Saenger*, 303 U.S. 59, 62 (1938); *see also Perez Arellano v. Cerna*, 827 F. Supp. 3d 954, 961 (N.D. Tex. 2026) ("While the conclusions of another court, when enforced onto a peer court, are generally 'unassailable collaterally,' an exception has always existed for 'lack of jurisdiction.'" (quoting *Calderon Lopez v. Lyons*, 813 F. Supp. 3d 692, 701 (N.D. Tex. 2025))).

Still, this Court need not analyze the *ICWC* Court's jurisdiction because Petitioner is not entitled to habeas relief even assuming that the *ICWC* order is proper and requires ICE to apply the 2011 Policy and 2021 Policy to Petitioner. That is because neither the 2011 Policy nor the 2021 Policy prohibit ICE from continuing to detain a person, such as Petitioner, who was placed in removal proceedings *before* he filed his petition for a U visa.

Take the 2011 Policy first. It states that, "[a]bsent special circumstances or aggravating factors, it is against ICE policy to initiate removal proceedings against an individual known to be the immediate victim or witness to a crime."[3] 2011 Policy, at p. 1. That provision does not help Petitioner for two reasons. It governs only the *initiation* of removal proceedings

[3] Because Petitioner's minor child was the victim, it is unclear whether the 2011 Policy's language focused on "immediate" victims reaches him at all.

and says nothing about releasing a person already detained. And it applies only where ICE *knows* the individual to be a victim or witness. ICE initiated removal proceedings and detained Petitioner in June 2026 pursuant to those proceedings. *See* 8 U.S.C. § 1225(b)(2)(A). He did not file his petition for a U visa alerting ICE to his status as a (derivative) crime victim until July 2026. The 2011 Policy thus did not prevent ICE from initiating removal proceedings against him, nor did the Policy's instruction to ICE to "exercis[e] favorable discretion" with respect to victims of crime and witnesses to crime absent "serious adverse factors." 2011 Policy, at p. 2. The Policy expressly notes that such discretion may "take different forms." *Id.* In other words, favorable discretion need not take the form of immediate release.

The 2021 Policy is similar. It states that "absent exceptional circumstances, ICE will refrain from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits." 2021 Policy, at ¶ 2. "A civil immigration enforcement" action is defined as an "enforcement or removal determination, decision, or action" and includes the issuance of detainers, issuance of a notice to appear, the decision to "[d]etain or release" an alien, and "[w]hen and under what circumstances to execute final orders of removal." *Id.* at ¶ 3.2. The only civil immigration or removal action taken against Petitioner is his placement in removal proceedings and accompanying mandatory detention under section 1225. *See Buenrostro-Mendez*, 166 F.4th at 494–508. ICE took that action *before* Petitioner petitioned for a U visa and thus *before* ICE could possibly have known that he had a pending petition. Petitioner's continued custody does not constitute a new enforcement action taken with

knowledge of his petition, as ICE has made no fresh decision to "detain or release" him.

ICE's decision to detain and institute removal proceedings against Petitioner in June 2026 thus more closely falls under the 2021 Policy's instruction with respect to individuals who may have indicia of being a crime victim but "who are not the beneficiary of victim-based immigration benefits and do not have pending applications for such benefits." 2021 Policy, at ¶ 2. This provision also does not require immediate release. Even assuming ICE knew when it instituted removal proceedings that Petitioner was the father of a crime victim—and there is no reason to believe it did—that provision required ICE only to treat this as "a positive discretionary factor that must be considered in deciding whether to take civil immigration enforcement action against the noncitizen or to exercise discretion, *including but not limited to release from detention*." *Id.* at ¶ 2 (emphasis added).

That leaves the period after Petitioner filed his petition. Even then, the 2021 Policy instructs only that ICE "exercise discretion to defer decisions on civil immigration enforcement action" until U.S. Citizenship and Immigration Services ("USCIS") makes a "[n]egative bona fide determination or waiting list determination for pending U visa petitions." *Id.* at ¶ 2.1. So it may be "necessary and appropriate" for ICE to "coordinate with [USCIS] to seek expedited adjudication" of Petitioner's "victim-based immigration" petition. *Id.* at ¶ 2. But a suggestion to expedite adjudication and a directive to "defer" future action are not a requirement that ICE release someone who has already been detained subject to a lawful civil immigration enforcement action. After all, deferral preserves the status quo. And the status quo is that Petitioner was lawfully detained in June 2026 because the Government had initiated removal proceedings.

Finally, it is worth noting that the purpose of the 2011 Policy and 2021 Policy do not support Petitioner's argument that he should be immediately released. The policies state that their purpose is "to encourage noncitizen victims to seek assistance and report crimes committed against them despite their undocumented status." 2021 Policy, at ¶ 1; *see also* 2011 Policy, at p. 1 (explaining the goal of "minimiz[ing] any effect that immigration enforcement may have on the willingness and ability of victims, witnesses, and plaintiffs to call police and pursue justice."). There is no evidence or indication that Petitioner's detention has anything to do with his status as the father of a crime victim. Rather he has worked with law enforcement for years without incident, and was detained only after a traffic stop unrelated to that. Perhaps he is still entitled to a U Visa—that is for USCIS to decide—but ICE's decision to place him in removal proceedings when there is no evidence ICE knew of his status as the father of a crime victim in no way undermines the goals of the 2011 and 2021 Policies.

The Court therefore concludes that, even assuming that the 2011 Policy and 2021 Policy apply, ICE has not contravened either Policy, so Petitioner is not entitled to release under the provisions or the *Accardi* doctrine requiring agencies to follow their own rules and procedures. *See Ayala-Morales v. Olson*, No. 2:26-cv-00375-JRS-MJD, 2026 WL 1781976 (S.D. Ind. June 22, 2026) (denying a habeas petitioner's request for release even assuming he was a member of the *ICWC* class because all that membership entitles him to is treatment under the old policies; under the old policies, he would not have been entitled to release—just an expedited consideration of his application—and his arrest was not improper under the old policies because he did not have a pending petition at the time of arrest).

**III. Petitioner is not entitled to injunctive relief or the alternative relief he requests.**

Petitioner is also not entitled to an injunction from transfer outside the district. Petitioner presents no persuasive reason for the Court to enter an injunction prohibiting his transfer out of this district. *See, e.g.*, *Gonzalez v. Ybarra*, No. 3:25-cv-00656-LS, 2026 WL 93140 (W.D. Tex. Jan. 7, 2026) (denying a request for a temporary restraining order barring the petitioner from being transferred from a district). He has provided no reason why his transfer would be unlawful. And as this order explains, his detention is, in fact, lawful. Without a successful claim on the merits, no relief can be had. *See VRC LLC v. City of Dallas*, 460 F.3d 607, 611, 615–16 (5th Cir. 2006) (stating "[t]he party seeking a permanent injunction must . . . establish [] success on the merits[,]" and denying a permanent injunction for failure to prevail on the merits). Petitioner likewise presents no persuasive reason for the Court to enjoin his removal from the United States pending the adjudication of this petition. Even if he had, the Court would lack jurisdiction to do so. *See* 8 U.S.C. § 1252(g). Petitioner's request for an injunction is denied.

In the alternative to a grant of habeas relief, Petitioner requests that this Court "order Respondents to render a decision on Petitioner's pending request for prosecutorial discretion, termination, or administrative closure within a fixed and enforceable deadline[.]" ECF No. 6 at p. 41. The Court denies this request for two reasons. First, Petitioner presents no legal basis for such relief. Second, this relief is not available through a habeas petition. "[H]abeas is not available to review questions unrelated to the cause of detention." *Pierre*, 525 F.2d at 935. "[I]t cannot be utilized as a base for the review of a refusal to grant collateral administrative relief or as a springboard to adjudicate matters foreign to the question of the legality of

custody." *Id.* at 936. Petitioner's request for alternative relief is denied.

* * *

The petition for writ of habeas corpus is denied.

The Clerk is directed to serve this Order electronically on the United States Attorney's Office for the Western District of Texas.

*So ordered by the Court on August 24, 2026.*

ANDREW DAVIS
United States District Judge